JOE SEINSHEIMER ET AL V. ZORA ANN BURKHART.

No. 7123. Decided January 4, 1939.
Rehearing overruled February 1, 1939.
(122 S. W., 2d Series, 1063.)

*A. C. Wood,* of Houston, *Terry, Cavin & Mills* and *Joyce Cox,* all of Galveston, for plaintiffs in error.

Plaintiff was negligent in stepping into the street without looking and in attempting to cross the street outside the lines of traffic provided for pedestrians, and not waiting for the cars which were in the intersection when the signal lights changed, to clear the crossing. Sabine & E. T. Ry. Co. v. Dean, 76 Texas 73, 13 S. W. 45; Rio Grande E. P. & S. F. R. R. Co. v.

Dupree, 55 S. W. (2d) 522; Austin v. Nieman, 14 S. W. (2d) 794; 22 C. J. 777.

There was no basis for plaintiff's theory that defendants negligently entrusted the car to G. D. Flood, Jr. Neither was there any evidence that the said Flood, Jr., was the agent of the defendants, nor that they were engaged in a joint enterprise. Langford Motor Co. v. McClung Const. Co., 46 S. W. (2d) 388; Texas News Co. v. Lake, 58 S. W. (2d) 1044; El Paso Electric Co. v. Leeper, 60 S. W. (2d) 187.

*Allen, Helm & Jacobs, Ira J. Allen* and *W. S. Jacobs, Jr.,* all of Houston, for defendant in error.

After plaintiff had stopped on the curb to await a green light, and after the light had changed to green, proceeded to cross, first looking to her left from which traffic would come and at the center of the street looking to her right, and seeing that the intersection was clear, was not required to anticipate that cars not in the intersection would speed across the same against a red light, and having exercised ordinary care for her own safety, the issue of contributory negligence and proximate cause were for the jury. Texas & N. O. Ry. Co. v. Crow, 121 Texas 346, 48 S. W. (2d) 1106; Vesper v. Lavender, 149 S. W. 377; Moss v. Koetter, 249 S. W. 259; Shaver v. Mason, 13 S. W. (2d) 450.

The evidence showing that the car was owned by Mr. and Mrs. Seinsheimer and was being driven by Flood, with the consent of Mrs. Seinsheimer, and was being used in the furtherance of her purposes at the time of the accident, constituted the said Flood and the grandson of Mrs. Seinsheimer, as her agents, and made her and her husband liable for the negligence of the two boys, and was sufficient to establish the relationship of a joint enterprise with the defendants. Missouri, K. & T. Ry. Co. v. Salsman, 58 S. W. (2d) 1026; Allen v. Bland, 168 S. W. 35; Prince v. Taylor, 171 S. W. 826.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court Miss Zora Ann Burkhart was awarded judgment against Joe Seinsheimer and wife, Blanche Fellman Seinsheimer, and G. D. Flood, Jr., for damages for personal injuries sustained by her as the result of her being run down by an automobile belonging to the Seinsheimers and being driven at the time by Flood. The judgment was affirmed by the Court of Civil Appeals by a majority decision. 93 S. W. (2d) 1231.

It appears that Mrs. Seinsheimer, her daughter, Miss Emma Seinsheimer, her grandson, Fellman Seinsheimer, and the latter's friend, G. D. Flood, Jr., a boy 16 years of age, drove from Galveston to Houston in an automboile belonging to Mr. and Mrs. Seinsheimer. By previous arrangement they were all to have lunch together at noon that day at the Rice Hotel in Houston. Somewhere in the downtown district of the city Mrs. Seinsheimer and Miss Emma got out of the car and the two boys, Fellman and young Flood, went in the car out into a residental section to get Fellman's friend, Sam Miller, who was to join the party for lunch. The arrangement was for Mrs. Seinsheimer and Miss Emma to be picked up at the Schwartz China Shop and taken to the hotel. Miss Burkhart was run down by the automobile at the intersection of Main Street and Walker Avenue, a short distance from the Schwartz China Shop, at a time when Flood was driving and the other two boys, Fellman Seinsheimer and Sam Miller, were riding with him in the car. The boys had been driving in the city and were then on their way to pick up the two ladies.

Various acts and omissions of Flood were found by the jury to constitute negligence and the proximate cause of Miss Burkhart's injuries. The opinion of the Court of Civil Appeals reflects the findings of the jury and they need not be restated. Various acts and omissions of Miss Burkhart claimed by the defendants to constitute contributory negligence were likewise submitted and all save one were answered in her favor. In answer to one such issue the jury found that she attempted to cross Walker Avenue by walking over and upon a portion of the street not included within the lines of the side walk projected, but in answer to another issue it found that such act did not proximately cause or contribute to cause her injuries.

■ One of the principal grounds relied upon by all of the plaintiffs in error for reversing the judgments below is that, in attempting to cross the avenue outside of the pedestrian lane Miss Burkhart violated an ordinance of the City of Houston, thereby rendering her act negligence per se, and that, as a matter of law, contrary to the jury's findings, such negligence was a contributing cause of her injuries. There are cases in which a court is warranted in holding that a given act of negligence proximately caused an injury as a matter of law, but such cases are rare. Generally the question is one of pure fact, and that rule obtains, as held by the Court of Civil Appeals and the authorities cited in its opinion, in cases where the negligence consists in the violation of a statute or ordinance the same as in other cases. Just how this injury would have been avoided

had Miss Burkhart been in the pedestrian lane instead of outside of it we are unable to demonstrate. It might be reasoned logically that she would likely have avoided the injury, but certainly we cannot say, as a matter of law, that such result would have followed.

■ What has been written next above applies equally to the contention that Flood was not required to foresee harm to one outside the pedestrian lane, and that, therefore, his negligence was not a proximate cause of the injury. It was within the province of the jury to determine whether Flood should have foreseen this or some similar injury as likely to result from his negligence, and we are unable to hold, as a matter of law, that he should not have done so.

■ It is further claimed that Miss Burkhart was negligent, as a matter of law, in failing to discover the approaching car. This claim is based upon the fact that there were no obstructions, and that, had she been looking in the direction of the car, she could have seen it. The cases relied upon in support of this contention did not involve traffic lights in a city. A pedestrian crossing a street on a proper signal light is not charged by law with the duty of looking up the street beyond the intersection to discover approaching cars and anticipating that the drivers may disobey signal lights. All issues relevant to this contention are fact issues which have been resolved against the contention of the plaintiffs in error.

■ The Court of Civil Appeals properly disposed of the contention that a new trial should have been granted on account of improper argument of counsel. The record affirmatively discloses that defendants were not prejudiced thereby.

We also approve the holding of the Court of Civil Appeals on the question of the burden of proof.

■ Complaint is made of the refusal of the trial court to submit a number of special issues requested by plaintiffs in error. Without singling out these various issues and discussing them one by one we think it sufficient to state that each assignment raising these questions should be overruled for one or more of the following reasons: The application for writ of error fails to point out any testimony raising the issue, or there was no pleading calling for its submission, or the same issue was submitted in a different form in the court's main charge.

■ It is further claimed that many of the answers of the jury to special issues were wholly without any evidence to support them. Manifestly we cannot write separately on all of these

questions, but each has been considered and it has been determined that each answer is supported by some evidence. Its sufficiency is not a question within our jurisdiction to decide.

■ The charge to the jury contained the usual definitions of negligence and proximate cause. To these definitions plaintiffs in error objected and excepted upon the ground that they placed upon this 16 year old boy the duty of exercising such care as an adult would have exercised under the same or similar circumstances, and the duty of anticipating, in the exercise of such care as an adult would have exercised, that the injuries might result. It is claimed that the standard for determining this boy's negligence should have been that of an ordinarily prudent boy of 16 years of age and not that of an adult of ordinary prudence. If Flood was wanting in discretion or laboring under the handicap of some mental defect the burden was upon him to establish that fact. The presumption is that he was normal. We are referred to no testimony tending to overcome this presumption or raising an issue of fact as to his mental deficiency and the court did not therefore err in overruling this exception to the charge. St. Louis Southwestern Ry. Co. v. Shiflet, 94 Texas 131, 58 S. W. 945; Duron v. Beaumont Iron Works, (Com. App.) 9 S. W. (2d) 1104; Galveston H. & H. R. Co. v. Anderson, 187 S. W. 491 (Error Refused).

Having determined that the evidence does not raise an issue of fact as to young Flood's mental deficiency we do not reach the question discussed in the briefs of whether in a case in which a minor is a defendant and there is evidence of his want of discretion the court should, in its definition of negligence and proximate cause, instruct the jury to measure his conduct by that of an average child of his age rather than by that of an adult. A cursory investigation of that subject discloses that there is not a uniformity of decisions thereon, and this opinion is not to be taken as an expression by this Court one way or the other upon same.

■ Complaint is also made of the trial court's definition of negligence on the ground that it did not include the element of foreseeability of harm as the basis of duty. That element was embodied in the definition of proximate cause. It would not be profitable to enter into a discussion of whether it might not more logically be embodied in the definition of negligence. Certainly it is not desirable to embody it in both definitions, and the practice of embodying it in the definition of proximate cause has obtained so long in this State that we would hardly be justified at this late date either in condemning that practice, or in undertaking to bolster up the reasons justifying it.

■ We come now to consider the case as against the Seinsheimers alone. It would appear from the pleadings and the issues submitted to the jury that liability was sought to be fixed against them upon four distinct theories. One of these was what is commonly known as the family purpose theory. We question whether the facts of this case would bring it within the purview of that theory, even if it were recognized by this court, but find it unnecessary to discuss them for that theory has been distinctly rejected by this court in the case of Trice v. Bridgewater, 125 Texas 75, 81 S. W. (2d) 63, 100 A. L. R. 1014. It is due counsel that we observe that this case was tried before the decision of this Court in Trice v. Bridgewater was released.

■ Another theory was that of agency. We find no evidence raising an issue of fact upon that theory. The boys were using the car for their own purpose, and in no sense were they the agents of the Seinsheimers in doing so.

Another theory relied upon, and which was upheld by the Court of Civil Appeals, was the theory of joint enterprise. To our minds the facts fall far short of bringing the case within that theory, but, since we are to uphold the judgment on the theory next discussed, we find it unnecessary to discuss this one.

■ The theory upon which we think the judgment of the trial court should be affirmed is that of negligent intrustment. In answer to special issues the jury found that the car was being driven by Flood with the consent of Mrs. Seinsheimer; that Flood was incompetent to drive the car; that Mrs. Seinsheimer knew of his incompetency at the time she gave her consent; that the giving of her consent was negligence, and that such negligence was the proximate cause of the injury.

In 5 Am. Jur., Automobiles, Section 355, this proposition of law is announced:

"An owner who lends his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such a person. Intrusting the car to a minor child known to be a reckless and incompetent driver, * * * constitutes an act of negligence for which the owner is liable."

That proposition is sound in principle and sustained by the authorities. In addition to the cases cited in notes to the text above quoted, reference is made to copious notes in the follow-

ing volumes of A. L. R., Vol. 36, p. 1148; Vol. 68, p. 1013, and Vol. 100, p. 923. It is claimed that there is no evidence supporting the jury's findings on that theory. By the very nature of the theory it is impossible in most cases to establish the essential fact elements by clear and convincing testimony. In the instant case the plaintiff was laboring under the necessity of procuring the testimony from the defendants themselves. Mrs. Seinsheimer testified, in the nature of an admission against interest, that young Flood took the wheel of the car before reaching Houston on their trip over from Galveston and that:

"I couldn't tell you where, but on the road a little while, but I didn't let him drive long, because I was just afraid,—wasn't used to him and my daughter said she couldn't ride with him driving so we said, Fellman, you take the wheel again.

"Q. That was the conversation you had about him driving?

"A. Yes, didn't comment on it.

"Q. Didn't tell Fellman not to let Flood drive any more?

"A. Oh, no. No, I told him, Fellman you take the wheel, Grandma is nervous."

She further testified that at the time she and her daughter left the car just before the boys went out into the city to get Sam Miller her daughter did not want Fellman to go, that she wanted her mother to park the car. She further testified that when her grandson asked her to let him take the car: "I hesitated at first, but I said go on and take it, but I was worried. Do I have to tell you all about it? I didn't see him get in the car or anything else."

Young Flood was not interrogated specifically about this occurrence on the road over from Galveston when Mrs. Seinsheimer states that she told him to turn the driving over to Fellman, but he does testify that he was at the wheel at the time the ladies left the car and that he was still there when he and Fellman drove off to get Sam Miller. It appears from the record that Flood had had but a limited experience in driving automobiles; had never driven a car of the same make as the Seinsheimer car, and had never before driven in the City of Houston. This is not altogether satisfactory evidence, and is not of that clear and positive nature which we might require were we the triers of the facts, but it cannot be said that it constitutes no evidence at all on the issues of Flood's incompentency and of Mrs. Seinsheimer's knowledge thereof.

■ In the trial court separate requests for peremptory instructions were filed by Mr. and Mrs. Seinsheimer, and each was

overruled. Upon what ground Mr. Seinsheimer's motion was overruled we are not advised. The· separate property of the husband is not liable for the torts of the wife. Article 4613, R. S. 1925; Scott, Commissioner of Insurance, v. Brazile et ux, (Com. App.) 292 S. W. 185; Jackson v. Dickey, (Com. App.) 281 S. W. 1043. The tort upon which we are permitting the judgment of the trial court to stand against Mrs. Seinsheimer was solely her personal tort with which her husband had no connection whatever. The judgments of the trial court and Court of Civil Appeals should be so reformed as to relieve the separate property of Joe Seinsheimer from their operation.

Our order is that the judgments, both of the trial court and the Court of Civil Appeals, be reformed in the particular indicated above and that, as reformed, they be affirmed.

Opinion adopted by the Supreme Court January 4, 1939.

Rehearing overruled February 1, 1939.