**MARTIN MORTUARY, et al., Appellants,**

v.

**The CITY OF EL PASO, Appellee.**

No. 5130.

Court of Civil Appeals of Texas.

El Paso.

Nov. 9, 1955.

Rehearing Denied Dec. 28, 1955.

Tad R. Smith, Kemp, Smith, Brown, Goggin & White, El Paso, for appellants.

H. E. Brockmoller, Asst. City Atty., Travis White, City Atty., El Paso, for appellee.

McGILL, Justice.

This is a property damage suit resulting from an automobile accident brought by appellee against Richard E. Martin, d/b/a Martin Mortuary, and Samuel Anderson, appellants, and also against Guillermo L. Sanchez, who has not appealed from the judgment of the trial court. After plaintiff had taken an interlocutory default judgment against Sanchez, trial was had before a jury, which found Sanchez guilty of negligence proximately causing plaintiff's damages, and found the defendants Martin and Anderson guilty of two acts constituting negligence per se, but further found that such acts were not proximate causes of plaintiff's damages. The court granted plaintiff's motion for judgment non obstante veredicto against defendants Martin and Anderson, and rendered judgment for $256.45 against these defendants. The sole point upon which this appeal is predicated is that since the jury found that each of the acts constituting negligence on the part of defendant Martin's ambulance driver was not a proximate cause of the damages to plaintiff's vehicle, the trial court erred in rendering judgment non obstante veredicto against defendants Martin and Anderson. The evidence is here briefly summarized:

M. L. Murray, a radio patrolman in the El Paso Police Department, testified that a little after midnight, on the morning of November 30, 1952, he stopped plaintiff's police car on a red light at the intersection of Copia and Montana Streets in the city of El Paso. He was faced east, and the traffic light was red. He heard the siren

on the Martin ambulance coming from the north on Copia Street before the traffic light governing Montana Street turned green, and before he could actually see the Martin ambulance; that when he first saw the ambulance it was a block and a half away and was coming south on Copia Street at a speed in excess of fifty miles per hour; that when the ambulance was about one-half block from the intersection he saw a convertible (operated by Guillermo Sanchez) coming west on Montana Street, that the ambulance siren was good and loud; that the light facing the ambulance turned red, and at the time that the convertible coming west on Montana Street entered the intersection the light was green for traffic on Montana Street; that the ambulance hit the convertible in the back part and swung it over and threw it into the police car driven by him; that although the windows of the Sanchez car were rolled up at the time of the accident it was a convertible, merely having its canvas top pulled up; that two other cars stopped at the intersection alongside the police car, one having stopped directly beside the police car and one being directly behind him; that the driver of the car on the right of the police car did not pull out when the light changed, and it was evident to him and apparently to everybody else there that the ambulance was coming at least a block and a half before it got there; that the ambulance laid down skid marks in an attempt to stop but that Mr. Sanchez laid down no skid marks at all, and as far as he, Officer Murray, could tell, Sanchez did not ever put on his brakes and did not make any attempt to slow down as he approached the intersection.

Gordon W. Bibb, the police officer who investigated the accident, testified that he measured the skid marks on Copia Street laid down by the ambulance, and found them to be 72 feet long, but that Mr. Sanchez' car did not lay down any skid marks; that Mr. Sanchez told him that he did not see the ambulance or hear the siren or see the red light (presumably the flashing red lights on the ambulance) until he got hit. Basing his opinion on the 72 feet of skid marks Officer Bibb concluded that the ambulance was going about forty miles per hour at the point of impact.

The jury, in answer to special issues, found (1) that at the time of and immediately prior to the accident the ambulance was being operated at a greater rate of speed than thirty miles per hour, but (2) that this was not a proximate cause of plaintiff's damages, (3) that at the time the ambulance entered the intersection of Copia and Montana Streets the traffic light facing it was red, but (4) this was not a proximate cause of the damages to plaintiff's car, (5) that defendant Sanchez failed to keep a proper lookout for the ambulance and (6) such failure was a proximate cause of the accident; (7) that defendant Sanchez failed to apply the brakes on his automobile prior to the collision, and (8) that such failure was negligence, and (9) such negligence was a proximate cause of the accident, and (10) plaintiff's damages were $256.45.

The trial court granted plaintiff's motion for judgment non obstante veredicto on the ground that the evidence raised no issue of fact as to the proximate cause with respect to (2) and (4)—in other words, that as a matter of law the speed of the ambulance and the fact that it entered the intersection when the traffic light facing it was red as a matter of law were proximate causes of the damage to plaintiff's car. In this conclusion we think the learned trial court fell into error.

 In the leading case of Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, the court said that there are cases in which a court is warranted in holding that an act of negligence proximately caused an injury as a matter of law, but that such cases are rare, that generally the question is one of pure fact. We think the general rule is applicable to the facts in this case. A jury might well conclude that the driver of the ambulance, sounding his siren in a loud manner and seeing the police car and other cars stopped on Montana Street at its intersection with Copia, might reasonably expect

that no vehicles would emerge into Copia Street from Montana Street under the circumstances, but would yield the right of way to the oncoming ambulance, which was visible and audible for a block and a half from the intersection—at least it was a question of fact that a driver of the ambulance in the exercise of ordinary care would so view the situation and act accordingly. For this reason we hold that the trial court erred in setting aside the jury findings and rendering judgment against defendants Martin and Anderson, and in failing to render judgment on the verdict of the jury.

It is therefore ordered that the judgment of the trial court be reversed and judgment here rendered that the plaintiff take nothing as against defendants Martin Mortuary, et al.