**LORILLARD, a DIVISION OF LOEW'S THEATRES, INC.,**
Appellant,

v.

**Ruthie DAVIS, Appellee.**

No. 05–88–00795–CV.

Court of Appeals of Texas,
Dallas.

April 21, 1989.

Rehearing Denied May 30, 1989.

Cynthia Hollingsworth, Michael G. Wimer, Dallas, for appellant.

Melvin H. Wolovits, William T. Mitchell, III, Dallas, for appellee.

Before McCLUNG, BAKER and KINKEADE, JJ.

BAKER, Justice.

This appeal is from a judgment for punitive damages against Lorillard for negligently entrusting an automobile to Henry Edward Johnson, one of its employees. We overrule Lorillard's five points of error and affirm the trial court's judgment.

Henry Edward Johnson, a Lorillard employee, was involved in an automobile accident in December 1984. Ruthie Davis sued Johnson for his negligence for causing the accident and sued Lorillard for negligently entrusting the automobile to Johnson, its employee. A jury found Johnson negligent for speeding, failing to keep a lookout, and following too closely. The jury failed to find that Johnson was grossly negligent in his conduct. The jury also found that Lorillard negligently entrusted the car to Johnson and found that Lorillard's conduct was grossly negligent. Based upon the jury verdict, the trial court awarded actual damages against both Johnson and Lorillard, jointly and severally. The parties have settled that part of the judgment involving actual damages. The court also entered judgment against Lorillard for punitive damages for $250,000.00 as found by the jury. This appeal involves only the punitive damages issue.

In its first point of error, Lorillard contends that the trial court erred in submitting jury question number 4 because it impermissibly commented on the weight of the evidence by assuming that Johnson was a reckless driver. Lorillard was held liable solely on the basis of negligently entrusting the car to Johnson. On the theory of negligent entrustment, the trial court submitted question number 4 as follows:

As to Lorillard, "negligence" means its entrusting a vehicle to a reckless driver if the entruster knew or should have known that the driver was reckless. Such negligence is a proximate cause of a collision if the negligence of the driver to whom the vehicle was entrusted is a proximate cause of the collision.

SPECIAL ISSUE NUMBER 4

Did the negligence, if any, of Lorillard proximately cause the occurrence in question?

Answer: "Yes" or "No".

ANSWER: *Yes*

Lorillard objected to question number 4 for the reason that the "same constitutes a comment on the weight of the evidence or a comment on the evidence because it assumes a reckless driver."

Lorillard argues that Johnson's recklessness was a crucial element of the

negligent entrustment claim, but the trial court did not define "reckless" in the charge, nor did it submit a separate question requesting the jury to find whether Johnson was reckless. The record reflects that Lorillard did not request a definition on Johnson's recklessness. When the court's charge contains no instruction or definition, the complaining party must accompany his clear and specific objection to such omission with a substantially correct instruction or definition. *See Yellow Cab and Baggage Co. v. Green,* 154 Tex. 330, 277 S.W.2d 92, 93 (1955). Since Lorillard failed to object to the absence of a definition of "reckless" and failed to submit an instruction or definition, Lorillard has waived its right to complain on appeal on this argument. *See* TEX.R.CIV.P. 278; *Kold–Serve Corp. v. Ward,* 736 S.W.2d 750, 753 (Tex.App.—Corpus Christi 1987, writ dism'd by agr.); *Bounds v. Caudle,* 611 S.W.2d 685, 687–88 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

Lorillard also claims that the trial court erred by failing to submit a separate question on whether Johnson was a reckless driver, an essential element of Davis' claim of negligent entrustment. We disagree. Question number 4, in combination with the accompanying definition of negligence, properly submitted the issue of Johnson's recklessness. By its affirmative answer, the jury necessarily found that Lorillard entrusted the vehicle to a reckless driver. In other words, the trial court submitted the issue on negligent entrustment in a broad-form question, which encompassed all elements of negligence and proximate cause. *See Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 571 (Tex. 1985). Such submission is not only proper but mandatory whenever feasible. *See* TEX.R.CIV.P. 277; *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 937 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Had the jury believed that Johnson was not a reckless driver, they would have answered "no" to question number 4.

Lorillard next contends that the question, as submitted, assumed Johnson

was reckless and is therefore a comment on the weight of the evidence. Lorillard objected to the question on that ground. Lorillard contends that rule 277 of the Texas Rules of Civil Procedure prohibits the submission of a question which directly comments on the weight of the evidence and relies upon *Briseno v. Martin,* 561 S.W.2d 794 (Tex.1977), as authority for its position that the question as submitted was erroneous. *Briseno* was also a negligent entrustment suit. The assertion made in *Briseno* is the same as Lorillard makes here. In *Briseno,* the argument was made that the issue impermissibly commented on the weight of the evidence because it was not submitted conditionally upon a finding that the driver was reckless. *Briseno,* 561 S.W. 2d at 796. The supreme court held that the specific issue in question did comment on the weight of the evidence, but the comment was only incidental because, in the preceding special issue, the jury specifically found that the driver was reckless. *Briseno,* 561 S.W.2d at 797. Lorillard argues that in this case the jury was never asked to determine whether Johnson was reckless, and since his recklessness was a question of ultimate fact, and because the issue as submitted assumes his recklessness, it was a direct comment on the weight of the evidence.

Davis argues that the question as submitted conforms with the current preference for broad-form question submission. *See Lemos v. Montez,* 680 S.W.2d 798, 799 (Tex.1984). In *Lemos,* the supreme court held that, since the amendment of rule 277 in 1973, broad issue submission has been repeatedly approved as the correct method for jury submission. *See Lemos,* 680 S.W. 2d at 801; *Brown,* 601 S.W.2d at 937.

In this case, the instruction submitted by the trial court embodies all of the elements of the theory of negligent entrustment. These elements are: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's

negligence proximately caused the accident. *See Williams v. Steves Industries, Inc.*, 699 S.W.2d at 571; *Mundy v. Pirie–Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587, 591 (1947). In the form submitted, the question requires the jury to find all the elements of negligent entrustment in order to answer the question in the affirmative. In our view, the definition and question were proper under current practice, and no error is shown. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 925 (Tex 1981). We overrule point number one.

■ In its second point, Lorillard contends that the trial court erred in entering judgment against it for negligent entrustment because the jury found that Johnson was not reckless. The trial court submitted question number 3 as follows:

## SPECIAL ISSUE NUMBER 3

Was such conduct of Henry Edward Johnson "gross negligence"?

"Gross negligence" means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

Answer "Yes" or "No".

ANSWER: *No*

Lorillard contends that because the jury found Johnson was not grossly negligent that this determination means that Johnson was not reckless. Lorillard argues that our supreme court has held that reckless conduct is synonymous with gross negligence. *See Burk Royalty*, 616 S.W.2d at 920. Lorillard argues that since Johnson's recklessness was a material element of the negligent entrustment claim against Lorillard, and that since the jury determined that Johnson was not grossly negligent and therefore not reckless, the trial court erred in entering judgment against it.

We find this argument unpersuasive. A review of the charge in its entirety reflects that the trial court submitted question number 3 conditionally to the jury's answer to question number 2. The first question submitted by the court asked the jury to find whether Johnson drove at a greater rate of speed than a person of ordinary care should have driven, whether he failed to keep a proper lookout, whether he failed to make a proper application of his brakes, and whether he followed the car more closely than he should have. In answer to this issue, the jury found that he did drive at a greater rate of speed than he should have, that he failed to keep a proper lookout, and that he followed too closely. In answer to question number 2, the jury found that each one of these acts by Johnson was a proximate cause of the occurrence in question. Question number 3 then inquires as to whether "such conduct" of Johnson was gross negligence. It is clear that these issues inquire as to the nature of Johnson's conduct on the occasion in question—that is, the collision itself.

■ Question number 4 inquiring whether Lorillard was negligent because it entrusted a vehicle to a reckless driver is a separate and distinct inquiry. Knowledge of the recklessness of the driver at the time consent to drive is given is the essential element of a negligent entrustment action. *See Seinsheimer v. Burkhart*, 132 Tex. 336, 122 S.W.2d 1063, 1067 (Tex.Comm'n App.1939, opinion adopted); *see also Briseno*, 561 S.W.2d at 796. An owner's liability in such cases is based upon its negligence in entrusting the automobile to a reckless driver, and that constitutes the act of negligence for which the owner is liable. *Seinsheimer*, 122 S.W.2d at 1067. In this case, the jury's failure to find Johnson grossly negligent does not lead to the conclusion that it could not find him a reckless driver in connection with Lorillard's negligent entrustment of a car to Johnson. *See Williams*, 699 S.W.2d at 571; *Briseno*, 561 S.W.2d at 796. We overrule point number two.

In points number three and four, Lorillard contends that the jury's answers to questions numbers 3 and 4 result in an irreconcilable conflict and that the trial court erred in entering judgment without requiring the jury to reconcile the conflicting answers. The basis for Lorillard's argument is the contention raised in point

two—that is, the jury found in answer to question number 3 that Johnson was not grossly negligent, that it therefore could not find Johnson a reckless driver in the context of answering question number 4 "yes" against Lorillard. Because of our conclusion in point number two, it follows that there is no irreconcilable conflict, and there is no error. We overrule points three and four.

■ Lorillard's fifth and final point asserts that there is either no or insufficient evidence to support the jury's finding of gross negligence on Lorillard's part for negligently entrusting the car to Johnson. The trial court correctly defined gross negligence as "such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it." *See Burk Royalty*, 616 S.W.2d at 920.

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W. 2d 609, 622 (1950); *Montgomery Ward and Co. v. Marvin Riggs Co.*, 584 S.W.2d 863, 865 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). In determining whether there is some evidence of the jury's finding of gross negligence, the reviewing court must look to all of the surrounding facts, circumstances, and conditions, not just individual elements or facts. *Burk Royalty*, 616 S.W.2d at 922. The existence of gross negligence need not rest upon a single act or omission but may result from a combination of negligent acts or omissions, and many circumstances and elements may be considered in determining whether an act constitutes gross negligence. A mental state may be inferred from actions. All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence. *Burk Royalty*, 616 S.W.2d at 922. In making this determination, all evidence must be considered in a light most favorable to the

party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor. *Burk Royalty*, 616 S.W.2d at 922 (quoting *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970)).

When we review a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W. 2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985). During oral argument, Davis contended that this court was limited in its review of the gross negligence issue to a legal insufficiency test and relied on *Burk Royalty* as support for that position. Davis misapprehends both *Burk Royalty* and the supreme court's function. The supreme court did not conduct a factual insufficiency analysis in *Burk Royalty* because it does not have jurisdiction to do so. TEX.GOV'T CODE ANN. § 22.225(a) (Vernon 1988); *Deatherage v. International Ins. Co.*, 615 S.W.2d 181, 183–84 (Tex.1981); *Seinsheimer*, 122 S.W.2d at 1066.

Two witnesses testified about the facts surrounding Lorillard's entrustment of a car to Johnson. These were Johnson and Richard Walsh, another employee of Lorillard who was Johnson's supervisor. Johnson was present at the trial and testified in person. Walsh was not present at the trial, and his testimony was from his previous deposition.

Johnson testified that he was hired by Lorillard in late 1978. At the time he was hired, he understood that it was standard procedure for Lorillard to inquire into his driving history. It does not appear that Johnson had personal knowledge of the fact that Lorillard had secured a copy of his driving record for the five-year period preceding his employment by Lorillard. However, Johnson testified that he understood that that was a standard procedure for Lorillard. The driving record procured by Lorillard at the time it hired Johnson reflected five entries. Between 1973 and

1977, Johnson received one citation for an improper turn, two citations for speeding, and two citations for automobile accidents.

Davis secured a copy of Johnson's driving record for the period December 16, 1982, through August 12, 1987. This record reflected a speeding ticket on December 12, 1982, attendance by Johnson at a safe driving course on June 15, 1983, another speeding ticket on October 30, 1984, and the December 28, 1984 accident which was the subject of this litigation. As a result of Lorillard's objection, any entries that were on the second driving record that came after the accident were deleted and not before the jury. Lorillard did not request any driving records other than the one secured at the time Johnson was hired. The two documents representing Johnson's driving record left a gap in time between August 1978 and December 1982. When Johnson was questioned as to whether he received any moving traffic violations in 1978, he stated he did not recall. When asked about 1979, he did not remember that either. His answer for 1980 and 1981 was that he did not remember receiving any violations. Finally, for the year 1982 up to December 16, he did not recall that he received any moving violation citations.

Johnson testified that at no time did he ever tell Richard Walsh or any other management personnel of Lorillard about his driving record. Johnson testified that he never discussed his entire driving record and that the only incident discussed was the accident made the basis of the lawsuit. Johnson also testified that at no time did anyone with Lorillard ask him about traffic violations or his driving record for the period of time after he was hired through the date of the accident in question.

By deposition testimony, Richard Walsh was identified as manager of Lorillard's South Fort Worth Division. He was responsible for all sales in a nineteen county area and responsible for seeing that Lorillard's national work plan adjunctives were being adhered to. Walsh was also responsible for the hiring and firing of sales representatives. Walsh identified a form as being a field demonstration and road test form that is given to all prospective employees, and that form set forth the standard policy that was to be used by Lorillard before issuing a car to an employee in his division. Walsh testified that the policy reflected in the exhibit was in force at the time Lorillard issued a car to Johnson. Walsh also identified Johnson's driving record that was procured by Lorillard at the time Johnson was employed. Walsh admitted that there is no document maintained by the company that identifies a deficient driving record within the framework of the company's policies and procedures. He also testified that there were no written policies to set forth the conditions under which Lorillard would suspend the personal driving privileges of a company employee.

It appears from part of Walsh's deposition that Lorillard had an accident review committee, the apparent purpose of which was to review a driving record following an accident involving an employee. Walsh testified that Johnson's driving record had never been reviewed from the time he was hired until the time of the accident. Walsh testified that the most important factor that he used in determining whether to hire an individual was responsibility, which he identified as the employees' responsibility for themselves. Walsh further testified that he was not aware of any Lorillard employees who had had their car taken away from them based upon an evaluation.

Walsh further testified that the criterion used to determine whether an individual should be given a company-owned automobile was a field demonstration which entailed going through the mechanics of job performance. He stated that sometime during the middle of this field demonstration the employee was given a driving test which included highway driving, city driving, and a variety of turns, stops, and starts. Walsh testified that the driving test averaged approximately thirty minutes. He testified that he personally gave the test and that he looked at how a prospective employee handled himself in the car on the highway—that is, some of the basic things such as turn signals, starting, stopping, moving around in traffic, seat

belts, and related matters. He also testified that there was no point system or specific standard as to how to judge whether a person was a good or bad driver—that he took him out and got a feel for it. Walsh testified that it was in his opinion a judgment call. Walsh further testified that there were no written policies by Lorillard establishing what a satisfactory or unsatisfactory driving report would be.

Walsh also testified that he looks at the entire interview with the prospective employee, considers the application, the prospect's resumé, how he reacted in the interview and the driving demonstration, and handled each case on a separate basis. When asked whether he did that because Lorillard really had no definite and specific policy regarding driving records as an exclusionary basis, Walsh testified that that was not the situation at all. He stated that Lorillard put the highest priority on safe driving records if for no other reason, financially. He then stated, "To lead me into saying that we don't have a policy because we're lax in it is not the case at all."

When asked whether Lorillard made periodic inquiries to an employee about moving traffic violations, Walsh answered that he checked the driver's license and talked to him. He admitted that there was not any specific request from each employee for information regarding that employee's driving record for the prior year and that he evaluated the employee and asked whether that person still had a driver's license. Walsh indicated that his concern when he questioned an employee on the yearly basis was whether he still had a driver's license. Walsh also testified that there was no company policy to randomly request information from the Bureau of Motor Vehicles to ascertain whether an employee had any additional moving violations.

Later in the trial, Johnson was reexamined by Davis' attorney. Johnson testified that at the time of trial he was still employed as a sales representative for Lorillard and still had a car. He confirmed that prior to the accident Lorillard never asked him about his driving record.

When we consider only the facts and circumstances that tend to support the jury's finding of Lorillard's gross negligence, we conclude that such finding is supported by some evidence. Lorillard had Johnson's record at the time it hired him and knew he had five moving violations including two accidents. Despite that record, Johnson was hired. Therefore, Lorillard made inquiries of Johnson as to whether he had a driver's license, and gave him quarterly half-hour driving tests, but Lorillard did not make any specific inquiries of his driving record. Following this accident, Lorillard continued Johnson's employment, and continued to permit him to use a car. We reject Lorillard's legal sufficiency argument.

Lorillard argues that the evidence is conclusive that in every instance it was diligent in investigating Johnson's driving record. It contends that it not only obtained his driving record prior to employing him but periodically tested his driving skills and inquired if he had any traffic violations. Lorillard points out that the tests were conducted four times a year during Johnson's employment. Lorillard asserts that its investigations and examinations of Johnson's driving record and skills revealed that it was not consciously indifferent to the rights of others. It argues that it exceeded the standards required by Texas law and that this is a case where they were diligent and conscientious in entrusting a car to Johnson. Lorillard argues that the jury ignored this uncontroverted evidence in reaching its finding that Lorillard was grossly negligent.

The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). An appellate court will not disturb the finding of a jury on conflicting evidence where there is some evidence to support its verdict unless the verdict is so overwhelmingly against the great weight and preponderance of the evidence as to shock the conscience or to show clearly that the conclusion was wrong or was the result of passion, prejudice, or improper motive. *Swin-*

*ney v. Winters,* 532 S.W.2d 396, 406 (Tex. Civ.App.—San Antonio 1975, writ ref'd n.r. e.). The mere fact that an appellate court might have reached a different conclusion does not authorize that court to substitute its judgment for the jury's findings. *Clark v. Cotten,* 573 S.W.2d 886, 888 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.). We have considered all of the evidence as we are required to do and conclude that the jury's finding of Lorillard's gross negligence in entrusting the car to Johnson is not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule Lorillard's point number five.

We affirm the trial court's judgment.

KINKEADE, J., files a dissenting opinion.

KINKEADE, J., dissenting.

I respectfully dissent. I would hold that the jury's finding that Lorillard was grossly negligent is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Regarding gross negligence, the Supreme Court of Texas has said:

Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). The supreme court added that the terms "gross negligence" and "heedless and reckless disregard" are synonymous terms and illustrated that synonymity with the following definition of "heedless and reckless disregard": *"[M]ore than* momentary thoughtlessness, inadvertence, of *error of judgment.* It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it." *Burk Royalty Co.,* 616 S.W.2d at 920 (emphasis added). Finally,

elaborating upon the term, "such an entire want of care," the supreme court said:

In testing the jury finding of gross negligence, the phrase "entire want of care" must be understood in the context of the whole sentence. The jury is not simplistically instructed that it must find an "entire want of care," but "... such an entire want of care as ... shows the act or omission was the result of conscious indifference...." If more than one act or omission is alleged and evidence produced to support them, the phrase "acts or omissions" should be used. The essence of gross negligence is not the neglect which must, of course, exist. What lifts ordinary negligence into gross negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature.

*Burk Royalty Co.,* 616 S.W.2d at 922.

The supreme court has stated the test for factual sufficiency as follows:

The question requires the Court of ... Appeals, in the exercise of its peculiar powers under the constitution and [the] Texas Rules of Civil Procedure ..., to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some "evidence of probative force" in support of the verdict.... The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict.

... It is in effect an erroneous ruling of law that the existence of "any evidence of probative force" in support of the verdict determines that the verdict is

not "contrary to the overwhelming weight of all the evidence."

*In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

The record reveals that when Lorillard hired Johnson in late 1978, it obtained a driving record on Johnson for the five preceding years, which revealed one citation for an improper turn, two citations for speeding, and two citations for automobile accidents. Lorillard requested no other driving record. From 1978 through mid-December 1982, Johnson did not recall any citations for moving violations. Davis produced evidence that Johnson received speeding tickets on December 12, 1982, and October 30, 1984. Johnson testified that Lorillard did not ask him about his driving record or traffic violations after Lorillard hired him until the time of the accident in question.

Walsh, who did not personally appear before the jury but whose deposition testimony was apparently read to the jury, stated that he checked to see if an employee had a driver's license on a yearly basis. Walsh also said that Lorillard's accident review committee reviews an employee's driving record after an accident and that Johnson's driving record had never been reviewed; this suggests that from late 1978 until December 28, 1984, the date of the accident in question, Johnson had not been involved in an accident involving a company vehicle. The majority states that Walsh gave Johnson a half-hour driving test four times a year. Finally, after the accident in question, Lorillard still employs Johnson and still permits Johnson to use a car.

Although there is some evidence of probative force to support the verdict, in my view, the jury finding is manifestly unjust. Whether Lorillard still entrusts Johnson with a car is not relevant to whether Lorillard was grossly negligent in entrusting the car to Johnson in December 1984. Given the fact that (1) Lorillard reviewed Johnson's driving record before employing him, (2) Lorillard required Johnson to take a driving test four times a year, (3) Lorillard annually checked to see that Johnson had a

valid driver's license, and (4) Lorillard reviews an employee's driving record after an accident illustrate to me that the jury's finding that Lorillard was consciously indifferent to the rights and welfare of others and has exhibited an entire want of care is clearly wrong or the result of passion, prejudice, or improper motive. *Swinney v. Winters*, 532 S.W.2d 396, 406 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). I will not speculate on what prompted the jury to find Lorillard grossly negligent, I simply state that the jury's finding is so against the great weight and preponderance of the evidence as to shock the conscience. Accordingly, I would sustain Lorillard's point of error five, reverse the judgment of the trial court, and remand the cause for a new trial.

Regarding point of error one, Lorillard argues that the trial court erred in submitting jury question four because it impermissibly commented on the weight of the evidence by assuming that Johnson was reckless. Although I am troubled with the submission of the question and instruction on Lorillard's negligence, I agree with the majority that point of error one should be overruled. However, because my reasoning for overruling point of error one is different than the majority's, I state my reasoning below.

Jury question four asks, "Did the negligence, if any, of Lorillard proximately cause the occurrence in question?" This question does not comment on the weight of the evidence and does not assume that Johnson was reckless. Lorillard's argument, when focused on the jury question itself, has no merit.

However, Lorillard's argument in its brief does not focus on the jury question; rather, Lorillard's argument focuses on the accompanying instruction, which states:

As to Lorillard, "negligence" means its entrusting a vehicle to a reckless driver if the entruster knew or should have known that the driver was reckless. Such negligence is a proximate cause of a collision if the negligence of the driver to whom the vehicle was entrusted is a proximate cause of the collision.

At trial, Lorillard objected to the jury question and not to the accompanying instruction. Where a trial court gives a definition or an instruction in connection with a special issue and a party is not satisfied with the instruction or definition given, in order to preserve error, a party must object to the instruction or definition "specifically and clearly pointing out wherein it is claimed the given instruction or definition is insufficient or is in error. It is not necessary for the objecting party to tender with his objection a substantially correct instruction or definition." *Yellow Cab & Baggage Co. v. Green*, 154 Tex. 330, 333, 277 S.W.2d 92, 93 (1955); TEX.R.CIV.P. 274. Therefore, because Lorillard did not object to the instruction, it waived the error, if any.

Lorillard also argues that the trial court erred in failing to define "reckless." When the court's charge contains no instruction or definition, the complaining party must accompany his specific and clear objections to such omission with a substantially correct definition or instruction. *Yellow Cab & Baggage Co.*, 277 S.W.2d at 93; TEX.R.CIV.P. 278. Because Lorillard failed to submit a definition of "reckless" in substantially correct form, Lorillard waived this error, if any.

In its brief, Lorillard also argues that the trial court erred by failing to submit a separate question on whether Johnson was a reckless driver, which Lorillard contends was an essential element of Davis's claim of negligent entrustment. Lorillard did not raise this issue at trial; therefore, because Davis submitted and the jury found an element of Davis's ground of recovery, "such omitted element or elements shall be deemed found by the court in such manner as to support to judgment." TEX.R.CIV.P. 279. This argument is without merit.

Lorillard has attempted to stretch its objection to the jury question to cover possible infirmities in the jury instruction, the failure to define "reckless," and the omission of an element of Davis's cause of action. As explained above, Lorillard has not procedurally preserved its error on those issues. In my opinion, the majority's discussion of the broad-form submission of jury questions is unnecessary. I would not address the issue of whether the question and instruction are proper under current practice and would leave that issue for another occasion when the complained-of error is properly preserved.