Opinion issued March 29, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-07-00572-CV

———————————

Cory Wayne Magee and Tracey D'Ann Mayo, individually and as
representatives of the Estate of Douglass Magee and Lois Magee, Appellants

V.

G & H
Towing Company and G & H Towing Inc., Appellees



 



 

On Appeal from the Probate Court No. 1

Harris County, Texas



Trial Court Case No. 350605-402

 



 

OPINION ON REMAND
FROM THE TEXAS SUPREME COURT

The trial
court rendered summary judgment in favor of the appellee-defendant, G&H
Towing Company.  On appeal, we reversed
the summary judgment and remanded to the trial court because one of the appellants-plaintiffs’
claims was not addressed in G&H’s summary-judgment motion.  312 S.W.3d 807.  The supreme court reversed our judgment,
holding that G&H’s failure to address one of the plaintiffs’ claims was
harmless because that claim was derivative of another claim, against a
different party, on which we affirmed summary judgment.  347 S.W.3d 293, 295.  The supreme court then remanded to this Court
for consideration of the plaintiffs’ other arguments not reached in our earlier
opinion.  We affirm the trial court’s
summary judgment in G&H’s favor.     

BACKGROUND

The claims in this case arise from an
automobile accident involving one of G&H’s employees.  Defendants William Colson and Joseph Violante
were employed by G&H as tugboat quartermasters.  They worked on the same tugboat, but they were
on different schedules.  One would work
for several days and then be relieved by the other, who then worked for a
similar period.  Because the tugboats did
not have a regular route that allowed each man to return to the place he began
his shift, the men would loan their personal vehicles to one another to drive
home at the end of a shift.  Whether G
& H required or endorsed this practice was disputed, but G&H conceded
in the trial court that this practice was widespread and that there was some
evidence that the practice was pursuant to an unwritten company policy.

As was their custom, on May 14,
2004, Violante borrowed Colson’s vehicle at the end of his shift and drove
himself home.  Later that night, Violante
drove Colson’s vehicle to a bar.  After
leaving the bar, Violante was involved in a collision that killed Douglas and
Lois Magee.  Violante was convicted on
two counts of failure to yield the right of way and intoxication manslaughter.

The Magees’ adult children sued
Violante, Colson, G&H Towing, and others connected to the bar, asserting
theories of negligence, negligent hiring, and negligent entrustment. The claims
against G&H were both direct and vicarious. Relevant to this appeal, the
Magees asserted that G&H was negligent, through its agent Colson, by
entrusting Violante with a vehicle without investigating his driving
record.  They further contended that
Colson had an independent duty to inquire about Violante’s competence as a
driver, and that G&H was vicariously liable for Colson’s negligent
entrustment of his vehicle to Violante because Colson was acting within the
course and scope of his employment with G&H at the time.  

A.   The Trial Court’s Judgment and Prior Appellate
Proceedings

G&H Towing filed a motion for
summary judgment, which the trial court granted, rendering an interlocutory
take-nothing summary judgment in G&H’s favor.  The trial court later severed the Magees’
claims against G&H, rendering that summary judgment in G&H’s favor a
final, appealable order.  A summary
judgment in favor of Colson was also severed, making a take-nothing summary
judgment in favor of Colson final as well. The Magees appealed both summary
judgments to this Court.

In our prior opinion, we affirmed
Colson’s take-nothing summary judgment, concluding that the trial court correctly
determined that there was no evidence of at least one element of the Magees’
negligent-entrustment claim against him because Colson did not have an
independent duty to investigate Violante’s competence as a driver. 312 S.W.3d at
812.  The Magees did not appeal our
determination in that regard to the supreme court.  

 In the same opinion, we reversed and remanded
the summary judgment favoring G&H Towing.  Id.
at 813.  Specifically, we concluded that
the trial court erred in rendering a take-nothing summary judgment in favor of
G&H because G&H’s motion for summary judgment failed to address the
Magees’ claim that G&H was vicariously liable for Colson’s negligent
entrustment of his vehicle to Violante.[1]  Id.
at 810–11.  Because of this omission, we
held the motion to be “legally insufficient as a matter of law in regard to
that ground.”  Id. at 811 (citing McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993)).  We then reversed the summary judgment and
remanded the cause without considering the other grounds raised in the motion
for summary judgment.  Id. at 813.

G&H appealed to the Texas
Supreme Court.  Because an employer
cannot be vicariously liable in tort when its agent or employee has not engaged
in tortious conduct, the supreme court concluded that we erred by remanding to
the trial court the claim that G&H was vicariously liable for Colson’s
alleged tortious conduct while simultaneously holding that Colson  had not committed a tort.  347 S.W.3d at 297 (“If the defendant has
conclusively disproved an ultimate fact or element which is common to all
causes of action alleged, or the unaddressed causes of action are derivative of
the addressed cause of action, the summary judgment may be affirmed”).  The supreme court thus reversed our judgment
and remanded the cause to this Court for consideration of the issues we did not
reach in our prior opinion.

B.   Issues on Remand

The Magees raised five issues in
their prior appeal:      

(1)            
G&H’s summary judgment motion did not address all of Plaintiffs’
claims as required under McConnell v.
Southside Ind. Sch. Dist., 585 S.W.2d 337 (Tex. 1993).

(2)            
Plaintiffs produced legally sufficient evidence that Colson was acting
within the course and scope of his employment with G&H when he entrusted
the vehicle to Violante, and G&H admitted that the record contained legally
sufficient evidence on this issue.

(3)            
Plaintiff produced legally sufficient evidence with respect to their
claims against G&H for vicarious liability for Colson’s negligent
entrustment of the vehicle to Violante; and therefore summary judgment with
respect to the Plaintiffs’ gross negligence claims against G&H, based on
the absence of evidence of ordinary negligence, was also improperly granted.

(4)            
G&H’s summary judgment motion contained no other basis upon which
summary judgment with respect to Plaintiffs’ claims of vicarious liability
based upon Colson’s negligent entrustment of the vehicle to Violante could
properly be entered or affirmed because under the circumstances of this case,
Plaintiffs were not required to adduce evidence of proximate cause other than
the evidence of proximate cause otherwise required by the elements of a cause
of action for negligent entrustment—i.e., that Violante’s
negligence was a proximate cause of the fatal accident.

(5)            
Plaintiffs produced legally sufficient evidence of each required element
of their causes of action for negligent entrustment against Colson, acting in
his capacity as agent of G&H.

The first issue was disposed of by
the supreme court’s opinion holding that G&H’s failure to address all the
Magees’ claims was harmless, and the second, third, and fourth were resolved by
our prior opinion concluding that there was no evidence to support at least one
element of the Magees’ negligent-entrustment claim against Colson (meaning
there was no independent negligent entrustment by Colson during the course and
scope of his employment for G&H to be vicariously liable for).  

The remaining, unresolved fifth issue—i.e., whether there is evidence to support a
direct claim of negligent entrustment against G&H—is not dependent upon whether Colson was
individually negligent, so we address the merits of that claim in this opinion.    

THE PARTIES’
ARGUMENTS

In addition to arguing that G&H
was vicariously liable, through respondeat
superior, for Colson’s negligent entrustment (a claim foreclosed by our
determination that Colson did not negligently entrust his vehicle to Violante),
the Magees argue in their brief that “G&H and Colson, in his capacity as
agent of G&H, should have known of Violante’s record of incompetent and
reckless driving because they had a duty to investigate his driving record prior
to entrusting Colson’s vehicle to him as part of G&H’s employee shuttle
transportation system.”    They note that “G&H regularly checked the
driving records of all employees who drove company-owned vehicles in connection
with the ‘shore side’ i.e., the dockside activities of the company.”  In contrast, “G&H took no action to
investigate the driving records of employees who would be using the vehicles of
their fellow employees as part of the company’s employee relief shuttle
system.”    According to the Magees,
“[b]ecause the employee shuttle system involved regular use of motor vehicles
by company employees for the benefit of the company and the furtherance of its
business interests, G&H had a legal duty to investigate the driving records
of employees who would regularly use vehicles in connection with this shuttle
system.”   

The Magees contend that G&H had
a duty—stemming from the special
employer-employee relationship G&H had with Violante—to investigate Violante’s driving record beyond
whether he was licensed.  They also argue
that his driving record and criminal record provided legally sufficient
evidence of incidents in close enough temporal proximity to the May 2004 wreck
to show that he was an incompetent and reckless driver:

11/05/2003-          injury accident with citation while
license suspended

06/23/2003-          license suspension, no insurance

05/16/2003-          citation for
excessively wide turn

02/20/2003-          citation for
speeding & no liability insurance

02/07/2002-          injury accident with citation

05/1997     -          
arrested & charged with reckless driving, speeding, DWI

11/1994    - arrested,
charged & pleaded guilty to driving with suspended license & carrying
unlawful weapon

08/1993    - charged &
acquitted of DWI

Despite these arguments by the
Magees about G&H’s direct liability for negligent entrustment, G&H
insists in its brief that the Magees have abandoned on appeal all direct
theories of liability advanced at trial, i.e., that G&H was liable for
negligent hiring, negligent supervision, and negligent entrustment.  Alternatively, G&H asserts that the
Magees’ direct negligent-entrustment claims are conclusively defeated by the
fact that G&H was not the owner of the vehicle driven by Violante at the
time of the accident.  They further
assert that, as a matter of law, “neither G&H nor Colson (i.e.,
individually or as alleged agent of G&H) had a duty to investigate
Violatne’s driving record prior to entrusting his vehicle to Violante” because
“Violante held a valid driver’s license when and at the time he took possession
of Colson’s vehicle” and because “there is no evidence that Violante was
intoxicated when and at the time he took possession of Colson’s vehicle.”        

Finally, G&H argues that “the
record reflects that Violante’s driving record is not legally sufficient
evidence of the alleged incompetence or recklessness that allegedly caused the
accident in question.”  Specifically, it
argues that, [i]n this case, there is no evidence of proximate cause because
the record of incompetence or recklessness, if any, of Violante was for minor
traffic violations, while the cause of the accident was arguably Violante’s
intoxication.”    Similarly, G&H
contends that Violante’s criminal record is devoid of any indication of guilt
or fault for moving traffic-related offenses.  


STANDARDS OF REVIEW

 We review the district court’s summary
judgment de novo.  See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

The standard governing a
traditional motion for summary judgment is well established: (1) the movant for
summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is therefore entitled to summary judgment as a matter
of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken
as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in the nonmovant’s favor.  See,
e.g., Nixon v. Mr. Property Mgmt. Co.,
690 S.W.2d 546, 548–49 (Tex. 1985).  Under
the “no-evidence summary judgment” rule, the movant may move for summary
judgment if, after adequate time for discovery, there is no evidence of one or
more essential elements of a claim or defense on which the nonmovant would have
the burden of proof at trial. Tex. R.
Civ. P. 166a(i).  

When a trial court does not state
the basis for its decision in its summary judgment order, we must uphold the order
if any of the theories advanced in the motion is meritorious.  Rogers
v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989).

NEGLIGENT ENTRUSTMENT

A.   Applicable Law

To establish liability under a
negligent entrustment theory for injuries arising from a vehicle collision, the
plaintiff must show that: (1) the defendant entrusted the vehicle to the driver;
(2) that person was an unlicensed, incompetent, or reckless driver; (3) at the
time of the entrustment, the defendant knew or should have known that the
driver was an unlicensed, incompetent, or reckless driver; (4) the driver was
negligent on the occasion in question; and (5) the driver’s negligence
proximately caused the accident.  Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 758 (Tex. 2007) (citing Schneider
v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987)).  To sustain such a claim based on a failure to
screen, a plaintiff must show that anything found in a background check “would
cause a reasonable employer to not hire” the employee, or would be sufficient
to put the employer “on notice that hiring [the employee] would create a risk
of harm to the public.”  Fifth Club, Inc. v, Ramirez, 196 S.W.3d
at 788, 796–97 (Tex. 2006).  The
plaintiff must also prove that the risk that caused the entrustment or hiring
to be negligent caused the accident at issue.  Schneider,
744 S.W.2d at 597.

B.   Analysis

G&H specifically challenges the
first three elements of the Magees’ negligent entrustment claim: (1) whether
G&H entrusted a vehicle to Violante, (2) whether Violante was an
unlicensed, incompetent, or reckless driver, and (3) whether G&H knew, or
should have known that Violante was an unlicensed, incompetent, or reckless
driver.  In addition, G&H argues
that, even if the Magees established the elements of a negligent-entrustment
claim, there is a fatal causal disconnect between the Violante’s alleged
incompetence as a driver and his intoxicated driving that caused the collision
and death of the Magees.    

Whether a duty exists in a
negligence case is a question of law for the court.  Greater
Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  The Magees’ theory is essentially that
G&H’s allegedly requiring Colson to share his personal vehicle with
Violante through the company’s relief shuttle system is—for purpose of negligent entrustment analysis—akin to G&H entrusting a company vehicle
directly to Violante.  Under this theory,
for the Magees to prevail, we would have to conclude as a threshold matter that
an employer has a duty to investigate the driving record of any employee to whom
it entrusts a vehicle beyond ascertaining that the employee has a valid
driver’s license.  

The Magees recognize that “the law
generally declines to recognize a duty to control the conduct of others,” but
insist that “this general rule does not apply to the situation of an employer
and employee.”  They acknowledge that
there are negligent-entrustment cases refusing to impose a duty to investigate
a person’s driving record beyond ascertaining that the person has a valid
driver’s license, but point out that these cases do not involve
employee-employer relationships.  See Avalos v. Brown Auto. Ctr., Inc., 63
S.W.3d 42, 48–49 (Tex. App.—San Antonio
2001, no pet) (no duty of automotive repair company to investigate record of
customer and licensed driver to whom loan vehicle was entrusted); Nobbie v. Agency Rent-a-Car, Inc., 763
S.W.2d 590, 591–93 (Tex.
App.—Corpus Christi 1988, writ denied) (no duty by rental car company to
investigate beyond confirmation of license).  
     

In support of their argument that
G&H owed a duty to investigate Violante’s driving record, the Magees cite
three cases.  See Russell v. Ramirez, 949 S.W.2d 480 (Tex. App.—Houston [14th
Dist.] 1997, no pet.); Lorillard v. Davis,
770 S.W. 2d 606 (Tex. App.—Dallas 1989, writ dism’d w.o.j.); Montgomery Ward & Co. v. Marvin Riggs
& Co., 584 S.W.2d 863 (Tex. Civ. App.—Austin 1979, writ ref’d n.r.e.).
We disagree that these cases support the argument that, on the facts presented
in this case, an employer has a duty to investigate its employee’s driving
record beyond ascertaining that the employee is a licensed driver, absent
evidence that the employer is otherwise on notice that the employee might be an
incompetent driver.    

In Russell v. Ramirez, the Fourteenth Court of Appeals affirmed a
negligent-entrustment judgment against a mother and father whose son wrecked
their vehicle.  949 S.W.2d at 483–83.  The
son’s driving record reflected that he received six or seven traffic citations
during the preceding two years.  Id. at 490.  While both parents denied knowing that their
son had a “bad driving record,” there was evidence that the father had previously
ridden with him and “commented to his son about his bad driving habits.”  Id.  Thus, in that case there was evidence that
the defendant should have known that the driver was incompetent, separate and
apart from a review of his driving record itself.  The court therefore concluded that, given the
evidence, the “jury could have chosen not to believe” the defendants’ testimony
that they did not know that their son was a bad driver.  Id.  In dicta, the court further observed that even
if the defendants conclusively established their ignorance of their son’s
driving record, the jury could still have found them liable for negligent
entrustment.  Id.  The court reasoned that
the “jury could have found that a reasonable owner should have inquired into
[the son’s] driving record and that the failure to make an inquiry about [the
son’s] driving record constituted negligence.” 
Id.  The court stated that the “jury could have
also found a reasonable owner should have known [the son] was a bad driver and,
by failing to check [his] driving record and inquire into [his] driving habits”
the defendants were negligent in entrusting their son with their car.  Id.  We do not agree that Russell compels us to hold that an employer necessarily has the
duty to inquire about its employees’ driving records.          

Unlike Russell, the other two cases cited by the Magees—Lorillard
v. Davis and Montgomery Ward & Co. v. Marvin Riggs
& Co.—do involve employment relationships, but neither case stands for
the proposition that an employer always has a duty to investigate its employees’
driving records when entrusting them with a vehicle.  In Lorillard,
the Dallas Court of Appeals affirmed a judgment on a gross-negligence finding
against an employer based on its entrustment of an employee with a company
vehicle.  770 S.W.2d at 611–13. 
The court held the jury’s finding was supported by evidence that the
employer entrusted the employee with a vehicle even though (1) the company
investigated and discovered, at the time the employee was hired, that he had
five moving violations and two accidents on his record, and (2) the company
failed to ever again inquire about the employee’s driving record after he was
hired and given use of a car.  Id. at 612.  In Montgomery
Ward & Co, the Austin Court of
Appeals likewise affirmed a judgment on a gross-negligence finding against an
employer based on its entrustment of an employee with a company truck.  584 S.W.2d at 866–68.  The
court held that the finding was supported by extensive testimony that a
supervisor that was charged with teaching the driver at issue how to drive a
truck expressed concern to the company that the driver could not judge
distances accurately, had trouble hearing, had trouble using truck mirrors, was
slow to learn how to drive, and was too flustered and nervous in stressful
situations to do anything.  Id. at 866.  Despite that supervisor’s expressed opinion
that it would be a “good long” time before the driver could become “really
safe” with the truck, if ever, the defendant-employer entrusted the driver with
a truck.  Id.  We disagree with the
Magees that Lorillard and Montgomery Ward & Co. impose a legal
duty on employers to investigate the driving record of an employee that holds a
valid driver’s license when there is no evidence that the employer has
additional information calling into question that employee’s driving ability.[2]  

The Magees do not dispute that
Violante had a valid driver’s license both when he was hired by G&H and at
the time Colson entrusted his vehicle to him. 
The Magees do not argue that there is any evidence that G&H had any
actual knowledge that Violante might be an unsafe driver.  Because the Magees’ negligent entrustment
argument against G&H is dependent upon their argument that it had a duty to
investigate Violante’s driving record beyond ascertaining that he had a valid
driver’s license, and because we have concluded—on the facts of this case—that G&H
did not have a general duty to investigate Violante’s driving record absent other
indicators that he may be an unsafe driver, we hold that the trial court
properly granted summary judgment on the Magees’ direct negligent-entrustment
claims against G&H.  

CONCLUSION

We affirm the trial court’s summary
judgment in G&H’s favor. 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Higley and Brown.











[1]
          G&H’s summary-judgment
motion addressed the claim that it was directly responsible for allegedly
entrusting the vehicle to Violante through its agent Colson, but the motion did
not address the claim that it was vicarious liability for Colson’s negligent
entrustment.





[2]
          Although not cited by the
Magees, we recognize that the Waco Court of Appeals in Southwestern Bell Telephone Co. v. Davis stated that evidence of an
employer’s hiring a driver without checking his driving record can support a
finding of ordinary negligent entrustment—but not gross negligence—even if the evidence establishes that the employer
had no actual knowledge of the employee’s driving record indicating that he was
an unsafe driver.  582 S.W.2d 191, 195
(Tex. Civ. App.—Waco 1979, no writ).  This
was dicta, as the court was reviewing the sufficiency of the evidence to
support only a gross-negligence finding. 
Moreover, such a broad proposition was not actually supported by the
authority the court cited in support.  Id. (citing Union Transps., Inc. v. Braun, 318 S.W.2d 927 (Tex. Civ.
App.—Eastland 1958, no writ), Mundy v.
Pirie-Slaughter Motor Co., 206 S.W.2d 587 (Tex. 1948), and Hines v. Nelson, 547 S.W.2d 378 (Tex.
Civ. App.—Tyler 1977, no writ)).  We
accordingly decline to adopt such a sweeping rule.  We also note that it is not clear whether, in
Southwestern Bell Telephone v. Davis,
driving was part of the employee’s primary responsibilities—a situation we do not
opine on today.